UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
EDDY REYES,

                      Plaintiff,

      - against -

PHOENIX BEVERAGES, INC.,

                      Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
13-CV-5588 (PKC) (VMS)

PAMELA K. CHEN, United States District Judge:

On September 15, 2016, the Court denied the cross-motions for summary judgment of Plaintiff Eddy Reyes ("Plaintiff") and Defendant Phoenix Beverages, Inc. ("Defendant") on Plaintiff's claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code. § 8-107. (Dkt. 65 ("MSJ Order").) Defendant now seeks reconsideration of that MSJ Order pursuant to Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. (Dkt. 67.) For the reasons stated below, Defendant's motion for reconsideration is GRANTED IN PART and DENIED IN PART. The Court presumes the parties' familiarity with the facts.

*LEGAL STANDARD*

Local Civil Rule 6.3, under which Defendant has moved for reconsideration, must be "strictly construed" so as to avoid "unnecessary relitigation," and may not be used as a substitute for appealing a final judgment. *Pena-Rosario v. Reno*, No. 99-CV-4652, 2000 U.S. Dist. LEXIS 6333, at *2–4 (E.D.N.Y. May 11, 2000). The grounds for reconsideration are therefore limited to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL*

1

*Irrevocable Trust* (*Kolel*), 729 F.3d 99, 104 (2d Cir. 2013) (quotation marks and citation omitted), and such motions "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court," *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided," *id.*, because motions for reconsideration are not "vehicle[s] for . . . taking a second bite at the apple," *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir.), *as amended* (2d Cir. 2012) (quotation marks omitted).

*DISCUSSION*

Defendant argues that the Court should reconsider the following holdings in its MSJ Order: (1) prolonged walking or standing were not essential functions of Plaintiff's job as an On Premises Sale Representative (Def. Recon. Mot.[1] at 1–5, 8–13); (2) Defendant failed to provide Plaintiff with the requisite notice of its specific fitness-for-duty certification requirement (*id.* at 5–6, 13–21); (3) Defendant waived the defense of judicial estoppel (*id.* at 6–7, 21–23); and (4) Plaintiff may proceed with his NYCHRL disability discrimination claim (*id.* at 23–24). In essence, Defendant contests every ruling unfavorable to it.

I.   Prolonged Walking and Standing as Essential Functions of Plaintiff's Job

Defendant argues that, in ruling that prolonged walking or standing are not essential functions of Plaintiff's job, the Court overlooked portions of the testimony of William Tierno, Plaintiff's immediate supervisor. (*See* Def. Recon. Mot. at 1–3, 8–9. *Compare* Dkt. 45 (Def. MSJ) at 17–18 (citing "Ex. 19 at 81:2–11" after quoted Tierno testimony), *with* Def. Recon. Mot. at 2–

---

[1] All citations to "Def. Recon. Mot." refer to Defendant's Memorandum of Law in Support of Its Motion for Reargument and Reconsideration of the Court's September 15, 2016 Memorandum & Order. (Dkt. 68.)

3 ("The additional portions of the Tierno deposition quoted at pages 17-18 of Defendant's Memorandum of Law [Dkt. 45] necessarily change [the Court's] conclusion.").) As Defendant itself acknowledges, however, this cited testimony was not included in the materials submitted by Defendant as cited in its summary judgment papers. (*See* Def. Recon. Order at 2 ("Defendant cited 'Ex. 19 at 81:2-11' for this quotation from [Tierno's deposition]. Unfortunately, this was an inadvertently incomplete citation . . . [and] [b]ased on the inadvertently incomplete citation . . .[,] pages 79, 80 and 82 of the Tierno deposition were inadvertently excluded from Exhibit 19 . . . .").)

Nevertheless, Defendant is correct that these portions of Tierno's testimony appear in the materials submitted by *Plaintiff*, which the Court overlooked. Upon review of this record evidence—counterbalanced against the text of the Job Duties description provided to Plaintiff's doctor by Defendant, as well as against Plaintiff's own testimony (*see, e.g.*, Def. Recon. Mot. at 11 (Plaintiff testified that he would "walk[] from account to account" between "10 to 20 accounts a day," but that he "could sit down")—the Court reconsiders its earlier holding and concludes that there is a genuine issue of material fact regarding whether prolonged walking or standing were essential functions of Plaintiff's job.[2]

---

[2] The remainder of Defendant's arguments regarding the Court's holding on prolonged walking or standing express mere disagreement with the Court's conclusion, rather than any clear error or manifest injustice. For example, Defendant argues that "[t]he Court overlooked the material contradiction [with respect to its] finding that the physical demands of prolonged standing and walking were not essential functions . . . [when they] are the very physical disabilities on Part A of the FMLA Package that Plaintiff's physicians found made Plaintiff 'unable to perform any of his/her job functions'[.]" (Def. Recon. Mot. at 12.) Yet, the Court's MSJ Order quoted precisely this referenced language from Plaintiff's medical records to conclude that, rather than prolonged walking or standing, "the most physical aspect of Plaintiff's job, as described by Defendant, seems to be the process of loading potentially heavy POS items into and out of Plaintiff's car . . . , and pushing and pulling an approximately 40-pound sample taste kit on wheels to and from Plaintiff's car and non-customer establishments," activities from which he was no longer restricted as of February 5, 2013. (*See* MSJ Order at 33–34 & n.31.)

In arguing for reconsideration, Defendant appears to conflate *prolonged* walking or standing, from which Plaintiff was restricted, with *any* walking or standing. (*See, e.g.*, Def. Recon.

3

II.  FMLA Notice Requirements

Defendant argues that the Court should reconsider its holding that Defendant failed to comply with the FMLA notice requirements because the record establishes that, in fact, Defendant did comply with these requirements, and "[m]ore significantly, this was never an issue at any time in the case." (Def. Recon. Mot. at 5–6, 13–14.)

A.  FMLA Notice Raised for the First Time on Summary Judgment

The Court need not spend much time on Defendant's contention that Plaintiff only raised noncompliance with the FMLA notice requirements for the first time in his summary judgment briefing, as Plaintiff's Complaint states a claim for FMLA interference (*see* Dkt. 1 ¶ 40), and as the Court noted in its MSJ Order, the failure to follow the FMLA's notice requirements may itself form the basis of an FMLA interference claim (*see* MSJ Order at 21). Moreover, Defendant has demonstrated no prejudice, *i.e.*, that discovery would have differed meaningfully, resulting from the Court's consideration of this aspect of Plaintiff's FMLA interference claim, other than that Defendant was not granted summary judgment in its favor. Indeed, as Defendant acknowledges, Plaintiff briefed this issue both in opposition to Defendant's summary judgment motion and in Plaintiff's affirmative motion for summary judgment. (*See* Def. Recon. Mot. at 13–14.) Yet, Defendant never argued, either in opposition to Plaintiff's motion for summary judgment or on reply in support of its own motion for summary judgment, what it argues now. Rather, Defendant

---

Mot. at 4 (arguing that essential functions of a job include inherent duties, "such as the ability to show up to work and to stay awake").) The Court acknowledged in its MSJ Order that Plaintiff's job entailed *some* walking, which Plaintiff's medical records did not restrict him from doing; the Court merely concluded that *prolonged* walking or standing appeared, from the record, to be "at most[] marginal functions" thereof, based not only on its reading of Tierno's testimony, but on Plaintiff's own testimony and the job description provided to Plaintiff's doctors by Defendant. (*See* MSJ Order at 31–34.) In light of the additional excerpts of Tierno's testimony, which the Court has now reviewed, the Court has reconsidered that holding, but does not conclude that this is sufficient to warrant granting summary judgment in Defendant's favor on this issue, for the reasons discussed, *supra*, and in the Court's MSJ Order.

4

argued strenuously that its "defense is that, consistent with the requirements of the FMLA and NYCHRL, Defendant long has had a policy of requiring each sales representative who is out from work for more than three days, because of a personal medical condition, to obtain a medical certificate that he or she is physically capable to return to work full duty so as to be able to perform the essential duties of the job without any restrictions . . . ." (Dkt. 59 (Def. Opp. to Pl.'s MSJ) at 1; *see also* Dkt. 48 (Def. MSJ Reply) at 5.) Defendant cannot now argue, in the guise of a reconsideration motion, that because the Court did not accept that defense, the Court should not have considered Plaintiff's argument in the first place.

B.  Compliance with FMLA Notice Requirements

With respect to Defendant's argument that it did, in fact, comply with the FMLA's notice requirements, Defendant's arguments do not merit reconsideration of the Court's MSJ Order, because they evince a fundamental misunderstanding of what the FMLA regulations require.

For example, Defendant cites to "Ex. B"—the response of Angelo Sgro, Defendant's former Director of Human Resources, to Plaintiff's summary judgment affidavit (*see* Def. Recon. Mot. at 8 n.5)—for the proposition that its Human Resources department "as a matter of course" complied with the requirements of 29 C.F.R. § 825.300(d) to provide oral notice of the fitness-for-duty certification requirement. (*See id*. at 15.) But this argument is inapposite. As the Court discussed in its MSJ Order, the FMLA regulations permit an employer to provide oral notice, only as to the *standard* fitness-for-duty certification requirement (and not as to the *specific* fitness-for-duty requirement Defendant sought to impose here), and only if an employer has a handbook or other written document that "clearly provide[s] that a fitness-for-duty certification will be required in specific circumstances . . . ." 29 C.F.R. § 825.300(d)(3). (*See also* MSJ Order at 27.) Defendant's "Ex. B" states only, in relevant part, that it is Defendant's "long standing [] policy or standard" that "[n]o sales representative or other employee on FMLA leave or personal medical

5

leave of absence can return to his or her job without a written medical release stating that the employee is cleared to return to his (or her) job full duty without any restrictions," and that Plaintiff "knew that policy[,] and Human Resource[s] personnel would have made it clear to him and other employees if and when they asked." (Dkt. 58-2 ¶¶ 4–5.) This establishes neither the existence of a *written* standard fitness-for-duty certification requirement, as required by the FMLA regulations, nor the requisite *affirmative* oral notice of that written policy, instead indicating that Defendant would have provided oral notice "if and when [employees] asked."

In an attempt to show that there did exist a written fitness-for-duty certification requirement, in compliance with both 29 C.F.R. § 825.300(d) and § 825.312(a), Defendant argues that Plaintiff acknowledged in writing that he received a copy of Defendant's Employee Handbook, and that "Section 307 [there]of . . . provides that 'Before returning to work from a sick leave absence of 3 calendar days or more, *an employee must provide a physician's verification that he or she may safely return to work*.'" (Def. Recon. Mot. at 16 (emphasis in original).) It is worth noting that, despite attaching other portions of this handbook, Defendant did not submit Section 307 and instead cited only Tierno's deposition testimony that it is his "understanding" that "in the employee handbook it states that in order for an employee to come back from medical leave they need to have full medical clearance." (*Compare id*. (citing Def. MSJ Ex. 19 (Tierno Deposition) at 88:3–21 and Lubelsky MSJ Aff. Ex. 15 (Tierno Deposition) at 91:11–92:3), *with* Dkt. 44 (D'Ablemont MSJ Decl.) ¶ 10 (describing Exhibit 7 as a "true and correct copy of excerpts from Defendant's Employee Handbook"), *and* Dkt. 44-7 (D'Ablemont MSJ Decl. Ex. 7) (Sections 317–320 of Employee Handbook).)

But even if this evidence were sufficient to establish the existence of a written policy regarding Defendant's *standard* fitness-for-duty certification requirement, this evidence does not

6

establish that Defendant complied with the *specific* fitness-for-duty certification requirement, which required Defendant to provide, in the time required, a list of the essential functions of Plaintiff's job and notice of the requirement that Plaintiff's fitness-for-duty certification would require a doctor to address the employee's ability to perform those essential functions. (*See* MSJ Order at 25, 29.)

Finally, Defendant argues conclusorily that "even if Defendant had failed to provide adequate notice under the FMLA, and it did not, failure to provide notice does not constitute an FMLA violation where, as here, 'the lack of notice had no effect on the employee's exercise of or attempt to exercise any substantive right conferred by the Act' because the employee was unable to perform essential functions of his job after the end of his 12-week FMLA period." (Def. Recon. Mot. at 19 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 161–62 (2d Cir. 1999)). This argument merely restates what the Court held in the MSJ Order in denying Plaintiff summary judgment: "the Court cannot grant summary judgment in Plaintiff's favor, as there exist genuine issues of material fact as to whether Plaintiff was nonetheless able to perform the essential functions of his job at the time his FMLA leave expired on February 18, 2013." (MSJ Order at 34–35.) This conclusion, however, does not justify granting summary judgment in *Defendant's* favor. Because there remain genuine issues of material fact regarding Plaintiff's ability to perform the essential functions of his job as of February 18, 2013—indeed, more now that the Court has reconsidered its holding regarding whether prolonged walking or standing were essential functions of Plaintiff's job—Defendant has failed to establish any basis on which the Court should reconsider its denial of summary judgment as to Defendant's compliance with the FMLA notice requirements.

III.  Judicial Estoppel

Defendant argues that it did not waive its judicial estoppel argument because its delay in raising that defense resulted from "Plaintiff chang[ing] his story" at the August 20, 2015 pre-motion conference.  (*See* Def. Recon. Mot. at 6–7, 21–23.)  This argument fails because Plaintiff, in his Complaint, asserted that he was able to return to work as early as December 26, 2012, having "recovered to the point that he was physically capable of performing his duties."  (*See* Dkt. 1 ¶ 19; *see also id*. ¶¶ 21, 23 (Plaintiff asserted that, between December 26, 2012 and February 7, 2013, Plaintiff attempted to return to work "on several occasions").)  Indeed, Defendant's current contention—that on August 20, 2015, "*for the first time*, Plaintiff represented to the Court that on December 26, 2012 and February 5, 2013, Plaintiff had been ready, willing and able to return to his sales job without any restriction and without any accommodation" (Def. Recon. Mot. at 21 (emphasis added))—is at odds with its contention in support of summary judgment that "*[s]ince the filing of the Complaint in this case* through the August 20, 2015 Pre-Motion Court conference, Plaintiff contended only that he was wrongfully denied the right to come back to his job *on December 26, 2012 and February 5, 2013 and was fully able to carry out all of his responsibilities*" (Dkt. 48 (MSJ Reply) at 7 (emphasis added)).

For these reasons, while there is evidence in the record placing Plaintiff's assertions in dispute, as discussed in the Court's MSJ Order, Defendant cannot now justify its failure to assert judicial estoppel in its answer by claiming that it was unaware that Plaintiff intended to argue that he could have fully returned to work at the time his FMLA leave expired.  In fact, contrary to its current assertion, Defendant argued in its summary judgment papers that it *had* asserted judicial estoppel as a defense in its answer.  (*See* Dkt. 48 (MSJ Reply) at 8–9.)  As with its argument regarding the FMLA notice requirements, therefore, Defendant's argument appears to be

8

premised, not on any actual error in the Court's MSJ Order, but on Defendant's fundamental dissatisfaction with the conclusions therein.

Finally, Defendant's reconsideration motion does not address the Court's substantive rejection of judicial estoppel, separate and apart from its finding of waiver. The Court held that even in the absence of waiver, Defendant's judicial estoppel defense would fail in light of the Second Circuit's holding in *Simon v. Safelite Glass Corp.*, 128 F.3d 68 (2d Cir. 1997). (*See* MSJ Order at 16–17 ("There is nothing in *Simon* that indicates or suggests that judicial estoppel applies to a situation where, as here, a plaintiff made an allegedly inconsistent statement to a *private insurer* in seeking disability benefits.").) The Court held explicitly that "the justification for applying judicial estoppel as articulated in *Simon—i.e.*, 'protect[ing] judicial integrity by avoiding the risk of inconsistent results in two proceedings'—does not justify estoppel here," but made clear that Plaintiff could still "be[] questioned or impeached at trial about his claim of disability" on these forms. (*Id*. at 17 & n.17 (citing *Eaton v. Goodstein Mgmt., Inc.*, No. 97 Civ. 6582, 1999 U.S. Dist. LEXIS 17655, at *14–16 (S.D.N.Y. Nov. 15, 1999)).) And finally, the Court held that Defendant's evidence was "insufficient to find estoppel on Plaintiff's claims as a matter of law," because "[a]t most, Plaintiff's statement to Defendant's disability insurance company was that he expected to be able to return to work on February 18, 2013, and indeed, Plaintiff stopped receiving disability benefits as of that date," such that there was no "inconsisten[cy] with Plaintiff's contention now that Defendant should have restored him to his job as of February 18, 2013." (*Id*. at 18.) Because Defendant's motion for reconsideration does not address these substantive holdings, it has not met its burden to show any "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" that would warrant reconsideration of the Court's MSJ Order regarding judicial estoppel. *See Kolel*,

9

729 F.3d at 104.

IV.  Plaintiff's NYCHRL Claim

Finally, Defendant argues that the Court should reconsider its Order permitting Plaintiff to proceed with his NYCHRL claim, because it construes the Court's Order as "unilaterally [] amend[ing]" Plaintiff's Complaint.  (*See* Def. Recon. Mot. at 24.)  While it is true that, in his Complaint, Plaintiff asserted that he "attempted to return to work thirty (30) days after he suffered a temporary disability" (Dkt. 1 ¶ 47), his NYCHRL cause of action also incorporated the other factual allegations made in the Complaint, including, *inter alia*, that "[b]etween December 26, 2012 and February 7, 2013, Plaintiff . . . attempted to return to work on several occasions" (*id*. ¶ 23), and that "Defendant engaged in unlawful discriminatory practices by discriminating against Plaintiff with regards to the terms and conditions of his employment on account of his temporary disability in violation of [the NYCHRL]" (*id*. ¶ 51).  (*See also* Dkts. 33, 35 at 1 (in letters in advance of the Court's August 20, 2015 pre-motion conference, Plaintiff alleged that "under the NYCHRL, Defendant . . . discriminated against [Plaintiff] due to his temporary disability"); Dkt. 33 at 3 ("An employee may recover under the NYCHRL for a cause of action of disability discrimination if the employee's disability caused the behavior for which he was terminated. . . . [Plaintiff] suffered a temporary disability and once suffered, Defendant immediately refused to restore him to his position as an on-premise sales representative," such that "Defendant discriminated against [Plaintiff] due to his temporary disability as a matter of law.").)

This is not Plaintiff "sneak[ing] in, in summary judgment papers, a factual or legal contention that the party had not raised before," as Defendant contends.  (*See* Def. Recon. Mot. at 24.)  Rather, this is a claim that has been part of Plaintiff's case since the beginning, one which implicates precisely the same issues as Plaintiff's FMLA claim, which were fully fleshed out in

discovery, regarding whether and when Plaintiff became fit for duty.  Therefore, Defendant has not met its burden to show any basis upon which the Court should reconsider its MSJ Order with regard to Plaintiff's NYCHRL claim.

*CONCLUSION*

For the foregoing reasons, the Court GRANTS the portion of Defendant's reconsideration motion regarding whether prolonged walking or standing are essential functions of Plaintiff's job; there is a genuine issue of material fact as to that question, which shall be presented at trial, in addition to the claims and issues identified in the Court's MSJ Order.  But the Court DENIES Defendant's motion for reconsideration in all other respects.  The parties are still required to submit a proposed joint pre-trial order no later than November 4, 2016.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 13, 2016
   Brooklyn, New York